Frantz, Jr., &c., v. Jacob, &c.

Case 82—PETITION EQUITY.—May 7.

# Frantz, Jr., &c., v. Jacob, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

88  525
88  216

88  525
111  515

88  525
115  364

1. REPEAL OF STATUTES.—The act of May 12, 1884, entitled " An act to revise and amend the tax laws of the city of Louisville," was only an amendment to the *ordinary* tax laws of the city, and not intended to repeal an existing charter provision authorizing *extraordinary* appropriations of money by the consent of the people expressed at the polls.

2. ASSESSMENTS FOR STREET IMPROVEMENTS.—Where one portion of a city has improved its streets by taxing the owners of property bordering on the improvement, the same owners can not be taxed to improve the streets in another part of the city in like manner, as this would be unequal taxation; but where the contingency arises requiring an expenditure for the improvement of the great and principal thoroughfares of a city, it was never contemplated that the owner of property bordering on the improvement should incur the expense if it would result in the virtual confiscation of his property or the imposition of a burden unequal and unjust, and in such a case the city council may, when authorized by the charter, resort to a popular vote and obtain, by the consent of those to be taxed, the right to contract such a debt as is necessary to make the improvement.

3. SAME—ORDINANCES.—It is not indispensable to the validity of an ordinance making such extraordinary appropriations that it should, in express terms, provide how and by whom the tax to pay the liability thus created shall be collected, although the charter provides that " provision shall be made in such ordinance to levy and collect an annual tax upon such estate within the city as may be designated by the council."

4. SAME—MUNICIPAL BONDS.—It is no objection to an ordinance providing for the issual of municipal bonds that it gives the mayor the discretion to sell the bonds at a lower rate of interest than that fixed in the ordinance if he can do so. Such a provision is not an unauthorized delegation of legislative power.

5. SAME—PRINCIPAL AND AGENT.—Where an agent protects the interest of his principal by making a better bargain than authorized, his action is to be sustained because for the interest of his principal.

6. INJUNCTION.—A city tax-payer may enjoin the issuing of illegal bonds by the city, both for his own protection and for that of innocent parties who may purchase them.

LEWIS N. DEMBITZ and C. B. SEYMOUR for appellants.

1. A distraint for taxes may be enjoined on account of defects in the tax proceedings where the failure to enjoin will cause the negotiable securities of a city or county to come to the hands of innocent purchasers for value. (Harding v. Rockford, 65 Ill., 90; German Savings Bank v. Franklin County, 128 U. S., 126; Ferguson v. Landrum, 1 Bush, 548; Allison v. Louisville, Harrod's Creek & Westport Railway Company, 9 Bush, 247.)

2. The implied power of the council to borrow money otherwise than under express authority is altogether excluded by section 61 of the charter, which is not a tax law, and which is not repealed by the tax law of 1884, or by any other statute.

3. The reconstruction of public ways and the building of bridges and sewers are not "appropriate municipal objects" within the meaning of section 67 of the charter, which confers the power to borrow money for such objects. One set of streets can not be improved at the cost of the abutters, and other streets at the cost of the whole city. Local taxation must be uniform. (Howell v. Bristol, 8 Bush, 493.)

   The words "appropriate municipal objects" must receive their meaning from the whole charter in which they occur, taken altogether. (City of Covington v. McMickel's Heirs, 18 B. M., 286; Atkins v. Disintegrating Company, 18 Wall, 302; Commonwealth v. Plotts, 79 Pa. St., 164.)

   Municipal powers are strictly construed. (Dillon on Municipal Corporations, secs. 86, 91; Murry v. Tucker, 10 Bush, 240; Broadway Baptist Church v. McAtee, 8 Bush, 508, 515; Kniper v. City of Louisville, 7 Bush, 599; Richter v. Hughes, 2 B. & C., 499; City of Lafayette v. Cox, 5 Ind., 38.)

   Where the legislature has given to a municipal body what it thinks sufficient means to deal with a subject, all other modes of dealing with it are presumably excluded. (Johnson v. City of Louisville, 11 Bush, 527.)

4. The powers given by section 67 of the charter to borrow money payable beyond the current year is made to depend upon the levy of an adequate tax in accordance with the third proviso in section 68. (Gould v. City of Paris, Sup. Ct. of Texas, 17 Amer. & Eng. Corp. Cases, 340.) And as the power to levy such tax has been taken away by subsequent laws, the power to borrow money in the way indicated is also gone.

   The taxing power granted by the third proviso of section 68 was repealed by the act of May 12, 1884, known as "An act to revise and amend the tax laws of the City of Louisville." A statute covering the whole subject repeals all former statutes on the same subject. (Broaddus' Adm'r v. Broaddus' Devisees, 10 Bush, 290; Gorham v. Luckett, 6 B. M., 147; Morris v. Crocker, 13 How., U. S., 429; Herron v. Carson, 26 W. Va., 75; Kibbe v. Ditto, 93 U. S. 671, 678.)

Frantz, Jr., &c., v. Jacob, &c.

5. Assuming, however, that the borrowing power granted to the council in 1870 covered all the purposes attempted by the loan ordinance, and assuming, further, that the taxing power, upon which this borrowing power must rest, is not taken away by subsequent legislation, yet the ordinance is bad on each of the following grounds:

(a) The ordinance contains no provision for the collection of the tax, as required by section 68 of the charter of 1870.

(b) Want of certainty in defining the objects to which *all* the proceeds of the loan are to be applied.

(c) In leaving it to the discretion of the mayor as to whether the bonds shall bear. four or five per cent. interest, and in leaving it to him to determine how many bonds are to be "sold."

The powers devolved upon the council can not be delegated to others. (Hydes & Goose v. Joyes, 4 Bush, 464; Henderson v. Lambert, 14 Bush, 24; Murray v. Tucker, 10 Bush, 240; Dillon on Munic. Corp., sec. 96; State *ex rel.* v. Hauser, 63 Ind., 174; Birdsall v. Clark, 73 N. Y., 73; State *ex rel.* Henderson v. Bell, 34 Ohio St., 194; Ruggles v. Collier, 43 Mo., 359; City of St. Louis v. Clemens, 43 Mo., 395; City of East St. Louis v. Wherung, 50 Ill., 28.)

BROWN, HUMPHREY & DAVIE FOR APPELLEES.

1. The provision of the ordinance leaving it to the official judgment of the mayor to determine whether the bonds should bear five per cent. interest, or only four per cent., was a necessary and usual ministerial discretion, in order that the bonds may be marketed to the best advantage, and did not render the ordinance void. (Omaha Bank v. Omaha, 15 Nebraska R., 333; Madison v. Richmond & Three Forks R. R., 80 Ky., 27; Hitchcock v. Galveston, 96 U. S., 348; Dillon on Mun. Corp., 3d Ed., sec. 96.)

2. The case of Hydes & Goose v. Joyes, 4 Bush, 464, is distinguishable from this, and has been much modified by later cases. (Nevin v. Roach, 86 Ky., 502; City of Covington v. Boyle, 6 Bush, 204.)

3. The provision of the ordinance, that as soon as the bonds should be issued the mayor and commissioners of the sinking fund should sell them all, or any part of them, as they might deem best for the interests of the city, at the highest price that they might be able to obtain, only gave those officers a proper and usual ministerial discretion, and was necessary to enable them to market the bonds in such quantities and at such time as they could find desirable purchasers. (Dillon on Mun. Corp., section 96.)

4. The construction sought to be put upon the ordinance by appellant, and which would cause it to make no provision for the surplus if the $1,500,-000 of bonds sold for more than par, is unwarranted. The true construction is that the bonds are to be "sold," and that the "proceeds"

(whatever the proceeds may be) shall be appropriated to the purposes named. An ordinance or statute must, if possible, be so construed as to avoid absurdity, and so as to give it force and legality. (Com. v. Bailey, 11 Bush, 688; Waller v. Martin, 17 B. Mon., 190.)

5. The objection that the ordinance is void for failing to provide how or by whom the taxes shall be collected to pay the bonds, is unfounded. That ordinance, together with the other city ordinances and statutes to be read along with it, show full provisions for such collection of taxes. And where a tax is provided, and no special provision made for collecting it, the law implies that it is to be collected along with the other taxes. (Lucas' Charter and Ordinances of Louisville, pages 259, 265; Acts 1883-4, vol. 2, page 1274; Cooley on Taxation, 1st Edition, page 255, note 5; State v. Bremond, 38 Texas, 128.)

6. The city charter provides two systems of public improvement. The one is by local assessment, or taxation on separate districts, for improvements in that district; and this is the usual and ordinary method, and the one which can be exercised by the city council itself, without consulting the people. The other is by general taxation, or by pledging the general credit by the issue of bonds. But this second method can only be adopted when approved by a vote of the people. The first system is intended for the ordinary current annual improvements and repairs. The second system is intended to be called into requisition only in special emergencies. (City Charter of 1870, sections 67, 68, 69.)

7. The fact that the city council is given the right to make public improvements at the cost of adjacent property owners, is not inconsistent with, but is only cumulative to, the general right of the city to make such improvements by sale of bonds to be paid by general taxation. (Cooley on Taxation, 1st Ed., 416, 435; Dillon on Mun. Corp., secs. 747, 752, 810; Cumming v. Mayor, 11 Paige, 600; Oakland Co. v. Rier, 52 California, 275; Bradley v. McAtee, 7 Bush, 667; Town of Versailles v. Versailles Turnpike, 8 Ky. Law Reporter, 704; City of Lou. v. Hyatt, 5 B. Mon., 202; City of Bowling Green v. Guffield, 6 B. Mon., 225; Kaye v. Hall, 13 B. M., 455; Kearney v. Covington, 1 Met., 343.)

8. The provision of the city charter of 1870 authorizing the city upon a popular vote taken to make public improvements by the sale of bonds to be paid by general taxation, was not repealed by the charter amendment of May 12, 1884. That act of 1884 only related to current annual taxation by the city council. Implied repeals are not favored. (Courtney v. Louisville, 12 Bush, 424; Com. v. Weller, 14 Bush, 218.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the Louisville Law and Equity Court by the appellant, who is a resident of that

city, and a tax-payer, to enjoin the mayor and council from issuing $1,500,000 of bonds, in accordance with the popular will, ascertained at an election held for that purpose, and by virtue of an ordinance under which the submission was made. No question is raised as to the passage of the ordinance, or the election held under it, but it is claimed that so much of the city charter as authorized such an appropriation, with the consent of the people or otherwise, was repealed by an act approved May 12, 1884, entitled "*An act to revise and amend the tax laws of the city of Louisville.*" Section 67 of the charter of 1870 authorized the city to borrow money, and to give or loan the credit of the city in aid of any person or corporation, *for appropriate municipal objects.*

Section 68 provides the condition upon which the city council may contract debts and liabilities in behalf of the city beyond the amount of revenue of the current fiscal year, and payable within or beyond such year. The ordinance authorizing the creation of the liability must be published in the newspapers of the city, as required by section 68; it must be approved by a majority of the votes cast for it by the qualified voters of the city. The aggregate vote for and against the ordinance must not be less than one-fourth the aggregate vote at the last preceding general election for city or State purposes. Provision shall be made in said ordinance for levying and collecting the annual tax "upon such estate as may be "designated by the council, sufficient to pay the interest "on such debt or liability as the same shall become due, "and to discharge the principal thereof at maturity."

The right of the tax-payer to enjoin, in order to pre-

vent the issuing of these bonds, if illegal, both for his own protection and that of innocent parties who may purchase them, is not now an open question; and if this law under which the appropriation was made by the city, and approved by the popular vote, was repealed by the act of May 12, 1884, the injunction should have been perpetuated.

By an act approved March 11, 1884, under the title of "An act to designate certain persons to prepare new assessment and revenue laws for the city of Louisville," the legislature selected those learned in the law to prepare and formulate a complete system of laws "*regulating, in all respects, the assessment of property and choses in action, the duties of all assessing and collecting officers, the time, terms and manner of the payment of taxes, and the compensation to be allowed officers charged with the raising and collection of the revenue.*"

The act of May 12, 1884, was the product of the minds of one or more of the persons named in the act of March 11, 1884, and is aptly and skillfully drawn with a view, not of making a new charter, or of embodying all the laws on the subject of taxation applicable to the city, but of revising and reforming the mode of collecting and imposing taxation to meet the ordinary annual expenditures of the city government. The framers of that act saw the changes essential to the proper mode of enforcing and collecting such revenue, and no allusion is made, either in the act in question or by the legislature, to the right of the city council to make extraordinary appropriations, other than for the revenue proper, by the consent of the people expressed at the polls; in fact, the

power to make such appropriations having been taken from the council and confided to the people, was not the proper subject for consideration in discussing the plan to be adopted for enforcing the collection of the annual tax. It was not the imposition of a tax simply to defray the ordinary expenses of the city, but the question addressed to the voter is, Shall the council or the city make contracts for improvements municipal in their character, that creates a liability on your property to be enforced by taxation?    The annual taxation as provided by the original charter, and by the amendment of May 12, 1884, might be entirely inadequate to repair the public buildings of the city, or to reconstruct the streets that are worn out by constant travel, or the prosperity of the city might demand a large expenditure essential to the health of its citizens, or their comfort and convenience, and for such reasons section 68, of the charter of 1870, has been left untouched, that the city authorities may be able to meet any such emergency by the consent of the qualified voters. We do not mean to adjudge that where a system of street improvements has been adopted, and the western portion of the city has improved its streets by taxing the owner, that this same owner may be taxed to improve the streets in the eastern part of the city in like manner.    This would be unequal taxation, and open to constitutional objection; and while that system, producing equality and uniformity in imposing such burdens, should be adhered to, when streets, sewers, etc., become so much out of repair as the improvement, if made at the expense of the property owner, would result in a virtual confiscation of his property, or in the imposition

of a burden unequal and unjust, yet it is manifest the council may resort to the popular vote, and obtain, by the consent of those to be taxed, the right to contract such a debt as is necessary to make the improvement. If it is a municipal purpose to which the money is to be applied by the sale of these bonds, we perceive no objection to the ordinance, or the proceeding under it, as it can not well be doubted that the reconstruction of streets, sewers, etc., belong to the municipality, and it is the duty of the council to see that they are opened and kept in order for the public convenience. When the contingency arises requiring an expenditure for the improvement of the great and principal thoroughfares of a city, it was never contemplated that the owner should incur the expense if the burden was such as would take from him his property instead of improving it, and in such cases resort should be had to the provisions of section 68, and the improvements made, should the voters favor the ordinance, for by their votes they express a willingness to be taxed. If the owner should be taxed in the ordinary mode so as to make the improvement bordering on his property liable for its value, and to an extent that would, in effect, confiscate his property, he would at once receive the protection of the Chancellor; and with section 68 of the charter of 1870 repealed, the growth and progress of a great city would be checked, and no remedy left either the city authorities or the people to avoid the result. We think it plain that the act of May 12, 1884, was only an amendment to the ordinary tax laws of the city, and that neither the framers of that act nor the legislature considered, in its adoption, section 68 of the

charter of 1870.    (City of Louisville v. Hyatt, &c., 5 B. M.,
199; Broadway Baptist Church v. McAtee &c., 8 Bush,
508; Oakland Paving Co. v. Rier, 52 California, 270;
Cumming v. Mayor, &c., 11 Paige, 600.)   The right or
the extent of taxation by the city council is limited by
the act of May 12, 1884, and when an appropriation ex-
ceeding the ordinary amount necessary for the revenue
proper, and payable in the same or in a different year,
becomes necessary, it can only be done by the consent of
the qualified voters of the city.

This case is unlike that of Broaddus' Devisees v. Broad-
dus' Heirs, 10 Bush, 299.   In that case the object of the
framers of the General Statutes was to embrace in them all
statutory enactments of a general character, and in this
case the purpose was to revise and amend the tax laws of
the city, and has no reference to such contracts and liabili-
ties mentioned in section 68, that may be entered into by
the council with the consent of the people, although taxa-
tion must necessarily be resorted to in order to a com-
pliance with such contracts.

Other objections are made to the validity of the pro-
ceedings by the council that are more technical than sub-
stantial, and afford no grounds for the injunction.    It is
urged that the discretion vested in the mayor, as to
whether the bonds shall bear interest at five or four per
cent., is a delegation of legislative power, and therefore
the ordinance is void.  The council had fixed the maximum
rate of interest at five per cent., but said to the mayor, if
you can sell the bonds at a lower rate of interest, it is your
duty to do so.   The object of the ordinance is to raise this
large sum of money, to be expended for municipal pur-

poses.    The amount is fixed, and the purpose of the expenditure is expressed in the ordinance, and there is no reason for holding the act of the mayor, who is the mere agent of the council or the city, *ultra . vires*, because he makes a better bargain than that contemplated by the ordinance.    If the agent exceeds the authority given him, by making the bonds bear a larger rate of interest than authorized by the ordinance, his act would be void; but when he protects the interest of his principal, by making a better bargain than authorized, his action is to be sustained, because it benefits the party for whom he is acting.    This court, in the case of the Madison County Court v. Richmond, Irvine & Three Forks Railroad Co., 80 Ky., 16, held, when the order of the county court provided the bonds to be issued should bear eight per cent. interest, and its action approved by the people, and the bonds were issued bearing six per cent., by the county judge, that the act being beneficial to the tax-payer, and the company to whom the subscription was made making no objection, the bonds were valid.

Dillon, in his work on Municipal Corporations, section 96, says : " But the principle that municipal powers or " discretion can not be delegated does not prevent a cor- " poration from appointing agents and empowering them " to make contracts, or from appointing committees and " investing them with duties of a ministerial or administra- " tive character."    See, also, Hitchcock v. Galveston, 96 U. S., 341.

The case of Hydes & Goose v. Joyes, 4 Bush, 464, was where the authority vested in the engineer by the council, authorized him to determine what part of the

sidewalks should be paved and graded. There was no ordinance directing the improvement made, but the entire matter left to the discretion of the engineer to say whether any should be made. In Nevin v. Roach, &c., 86 Ky., 492, the council ordered that the carriage-way should be constructed, but left it to the engineer to say in what part of the street it should be located. The case of the City of Covington v. Boyle, &c., 6 Bush, 204, was distinguished from Hydes & Goose v. Joyes for the same reason. In the latter case the engineer was left to say whether the improvement should be made, and in the other cases the improvement was ordered, but the manner of its execution was left to the engineer.

The mayor and commissioners of the sinking fund were authorized to sell these bonds, and such a discretion was properly confided to them, and, for the reasons already given, was not an unauthorized delegation of power.

In the 68th section of the charter of the city a clause is found saying, that " provision shall be made in such " ordinance to levy and collect an annual tax upon such " estate within the city as may be designated by the coun- " cil." It is argued that this provision requires the ordinance, in express terms, to provide the manner and by whom the tax shall be collected. The ordinance in this case does provide " that a tax of fifteen cents on each " $100 worth of property in the city of Louisville, which " is liable by law to be taxed for the support of public " schools, is ordered to be levied annually until said " bonds, principal and interest are paid." The manner in which taxes are collected is fully provided for in the

charter of the city, and the manifest intent of this clause, in section 68, was to prevent an appropriation of the money, and a sale of the bonds to raise it, without making any provision for its payment; and independent of the provision made, it seems to us that the council, by a subsequent ordinance, could proceed to have the taxes collected as other taxes are in the city, and that the taxpayer can not rely on such an omission for the purpose of invalidating the entire ordinance. We perceive no valid objection to the issuing of these bonds. The ordinary revenue derived from the annual imposition of the tax that the council may impose without consulting the people of the city is not more than sufficient to defray the current and usual expense of the city government, and when appropriations are made for improvements that require large expenditures of money, it has been provided that the voters of the city shall impose or approve the burdens before the property of the citizen can be taxed. It is not questioned that the city may appropriate money in aid of other corporations by the popular vote on the idea of benefits received, in the event section 68 is still in force; and it would be a singular construction of the charter to concede the legality of such an ordinance, and at the same time deny to the council the right to appropriate the means, by the consent of the people, to the construction or reconstruction of improvements so essential to the growth and prosperity of the city; and to go further, and hold, as we are asked to do in this case, that there is an implied repeal of section 68, by reason of the amendment and revision of the tax laws in May, 1884, would be an usurpation of power belonging to the legis-

lative department of the government, that was never attempted to be exercised when the amendment in question was adopted.

The judgment below is affirmed.