THE STATE ex rel. CITY OF CARTHAGE v. COWGILL & HILL MILLING COMPANY, Appellant.

### Division One, June 12, 1900.

1. **Bridges Over Mill Race:** DUTY OF MILLER TO ERECT. An ordinance granted millers the right of way for a mill race along a street, provided it did not "interfere with the ordinary use, occupation and enjoyment of such street." The city brought *mandamus* to compel the mill company to erect bridges over the mill race. *Held*, that the fact that at the time the alternate writ was issued there were convenient, safe and suitable bridges to accommodate the public, built by the city, but not exactly in line with the street, was a complete defense, whatever may have been the purpose of the city in locating the bridges somewhat out of line with the street.

2. ———: ———: RELEASE BY CITY. The city by resolution granted certain millers a right of way for their mill race along its streets "provided the same shall not interfere with the ordinary use, occupation and enjoyment of such streets." This is *held* to mean that the race should be covered with bridges so as to allow the traffic of the streets to pass without obstruction. The bridges were constructed, and in 1881, when they needed repairing, the city council by resolution agreed that the city would, upon payment of $150 by the millers, "assume charge of and keep in repair the mill race bridges." They paid the money, and in 1887 this resolution was ratified by ordinance. *Held, first*, that the agreement was not one granting a franchise, but one relating solely to the maintenance of the bridges; *second*, whatever obligation the millers were under, if any, in reference to maintaining the bridges after their original construction, was discharged under the agreement whereby they paid the city $150 for a release therefrom, there being no requirement in the city charter at that time that such agreement should be made solely by ordinance rather than by resolution; and, *third*, if the agreement lacked anything in the formality of its execution, that defect was cured by the ordinance which expressly ratified it.

3. ————: CITY'S DUTY CONCERNING STREETS: POWER TO CONTRACT. Where the charter requires the city to "make, maintain and keep in repair all streets, roads and bridges," the city is bound to the public to keep in repair bridges over a mill race which millers have been granted the right to maintain, although it has power, as between itself and the owners of the mill, to contract for the maintenance of the bridges over the race.

4. Municipal Corporation: RATIFICATION OF CONTRACT: NEW CONSIDERATION. A municipal corporation has power to ratify an act done in its name which lacks in the formality of its execution if such act is within its corporate powers. So also contracts made in the name of a city before it has been chartered, or before it has received legislative authority to contract, may be ratified by the corporation after it has been incorporated or authorized to contract. And where the ratification is simply adopting what had previously been done in the city's name, acknowledging the benefits and assuming the burdens of such previous action, the ratification needs no new consideration to support it.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins*, Judge.

REVERSED.

*Thomas & Hackney* for appellant.

(1) The city had ample authority and power to make the contract with Cowgill & Hill, whereby, in consideration of the payment of $150 by them, to the said city, it was agreed that the city should assume the repair and maintenance of the bridges. Sec. 2, art. 5, Laws 1875, p. 168; sec. 24, art. 5, Laws 1875, p. 170; sec. 5, art. 7, Laws 1875, p. 177; sec. 1, art. 7, Laws 1875, p. 178; sec. 55, art. 5, Laws 1875, p. 173. (2) At the time of making the contract and passing said ordinance, it was the duty of the city to the public to keep the bridges across the mill race on said streets in a safe condition for travel, and if it failed to do so and an injury occurred to any person travelling on said streets, on

account of a defect in either of said bridges, the city would have been responsible to the person injured in damages, notwithstanding said bridges may have been constructed by Cowgill & Hill, and that it may have been the duty of Cowgill & Hill, as between them and the city, to have kept said bridges in a safe condition for travel. Rosedale v. Golding, 55 Kan. 167; City v. Miller, 30 Kan. 494; Comns.. v. Topeka, 39 Kan. 197; Detwiler v. Lansing, 95 Mich. 494; Shelby Co. v. Blair, 36 N. E. Rep. (Ind.) 216. (3) The city being thus authorized and it being its duty to keep said streets, at said points, in a safe condition for travel, it clearly had a right to contract with Cowgill & Hill, in advance, for the payment of a sum deemed by the city sufficient to maintain and keep in repair said bridges; and it having done so, and the amount deemed by the legislative authorities of the city sufficient to compensate the city for the building, maintaining and keeping in repairs said bridges having been paid by Cowgill & Hill to the said city and kept and retained by the city, the said contract and the said ordinance are valid and binding on said city. Argentine v. Railroad, 55 Kan. 730; Kelley v. Minneapolis, 26 Law. Rep. Ann. 92; Philadelphia v. Railroad, 121 Pa. St. 44. (4) The city having the right to make the contract under any circumstances and for any consideration, having made it and acquiesced in it for that length of time, is now estopped from denying its validity. Where a municipal corporation enters into a contract within its powers, the doctrine of estoppel applies with the same force as against individuals. Union Depot v. St. Louis, 76 Mo. 393; Houfe v. Town of Fulton, 34 Wis. 608. (5) Where it is admitted that the bridge, as constructed, accommodates the public needs, no court ought to order the person on whom the duty of rebuilding and repairing rests, to construct another bridge alongside the bridge already in existence. Courts do not sit for the pur-

pose of vindicating purely technical rights or theories. State ex rel. v. Temp. Benv. S., 42 Mo. App. 490.

*H. J. Green* and *Howard Gray* for respondent.

(1) The ordinance granting the franchise in 1875 to Cowgill & Hill required them to construct their race so as not to interfere with the ordinary use, occupation and enjoyment of said streets and alleys. This ordinance was valid and required nothing more of the persons receiving the franchise than the general law would without any such ordinance. City of Kansas v. Railroad, 102 Mo. 633; State ex rel. Morris v. Railroad, 86 Mo. 13; Elliott Streets and Roads, p. 33; Tiedeman Mun. Corp., sec. 317. (2) The franchise was granted by ordinance and it could only be changed or modified by ordinance, and the resolution of the council in 1881 did not modify or repeal the ordinance granting the franchise. St. Joseph v. Wilshire, 47 Mo. App. 125; Eichenlaub v. St. Joseph, 113 Mo. 395; Dillon, Mun. Corp. (4 Ed.), sec. 45; Terre Haute v. Lake, 43 Ind. 480; Tiedeman, Mun. Corp., sec. 170. (3) The resolution reads: "Motion offered to accept proposition of Cowgill & Hill to pay to the city one hundred and fifty dollars in consideration of which the city is to assume charge of and keep in repair the mill race bridges." By the terms of this resolution the city did not agree to build new bridges in case the same were needed. State ex rel. v. Corrigan Street Ry. Co., 85 Mo. 263; City of Kansas v. Corrigan, 86 Mo. 67; District, etc. v. Railroad, Amer. and Eng. Ry. cases 174; Baltimore v. Scharf, 54 Md. 499; Sheldon v. Chicago, 9 Wallace, 50; Hughes & Dill v. Vanstone, 24 Mo. App. 637. (4) The evidence shows that the city received no compensation or consideration for adopting the ordinance in 1887 by the terms of which the city released the defendant from build-

ing new bridges in case the same were necessary. (5) There is no estoppel in this case either by the facts or the law. The city under the evidence has expended many times the money that it received from Cowgill & Hill, and the contract being void, it could not be ratified as the city attempted to do by the ordinance of 1887. Ruggles v. Collier, 43 Mo. 353; State ex rel. v. Murphy, 134 Mo. 548.

VALLIANT, J.—Appeal from the judgment of the circuit court of Jasper county awarding a writ of mandamus.

The substance of the complaint is that under an ordinance of the city passed in 1875, a right of way for a mill race across certain streets and alleys was granted to Cowgill & Hill, upon condition that "the same shall not interfere with the ordinary use, occupation and enjoyment of such streets and alleys;" that the race was constructed across Main and Jackson streets, and bridges were built over it by Cowgill & Hill to comply with that provision of the ordinance; that in 1895 these bridges were washed away by a flood and the defendant milling company a corporation, which is the assignee of Cowgill & Hill, has refused to repair them, and the streets are thereby left in a dangerous condition and unfit for the public use. The requirement of the alternative writ is that the defendant "repair, fix and construct said race at said points across said Main street and Jackson street in said city so that said race will not interfere with the ordinary use, occupation and enjoyment of said streets, or show cause," etc. The return is, substantially, that at the date of the issuance of the alternative writ the race was properly bridged and the streets at the crossing of the race were in good and safe condition for travel; that at the date of the grant of the right of way in 1875, there was already a natural ditch, made by the waters of Spring river at seasons of high water, which crossed those streets, and

bridges would have been necessary even if there had been no race; that the race was constructed along that natural course and did not increase the size of the bridges that would have been necessary to make the streets safe and convenient for travel; that in July, 1881, a dispute arose between the city and Cowgill & Hill, respecting the duty of the latter in reference to maintaining those bridges, to settle which dispute Cowgill & Hill made a proposition to the city to pay it $150 and be released from all claim of such duty, which proposition the city by resolution of its council accepted, Cowgill & Hill paid the money, the city received it and thereafter assumed and has ever since exercised exclusive control and burden of repairing and maintaining the bridges; that afterwards in 1887 the city passed a formal ordinance referring to that agreement, reciting the receipt of the money and ratifying the action of the council, after which the defendant corporation being informed of this action, on the faith of it, purchased the milling property, including the race, from Cowgill & Hill, and therefore the city is estopped to assert to the contrary of the agreement.

The reply denied that the streets were in reasonably safe condition at the issuance of the alternative writ, admitted that the city had erected bridges across the race at the points named, but that they were only temporary affairs, put there to use "during the pendency of this cause," and were dangerous to the public; denies that there was a natural ditch rendering bridges necessary, averred that the agreement of 1881 was void for the reason that the city acted only by resolution of its council, whereas it could grant a franchise by ordinance only, or alter the terms of such ordinance by another ordinance; that the city had no right under its charter to release Cowgill & Hill from their obligation, that there was no dispute about their liability, and it was only an attempt to release them from it, and

that the resolution did not purport to release them from building new bridges when necessary; that the ordinance of 1887 purporting to ratify the agreement was void because the city had no right to pass it and there was no new consideration to support it. The controlling facts gathered from the evidence are as follows: In 1875, Carthage was a city under a special charter, passed first in 1873 and amended in 1875 (Laws 1875, p. 159), its powers of government vested in a mayor and at least four councilmen. In December, 1875, the council passed an ordinance granting Cowgill & Hill a right of way for their mill race across certain streets and alleys "provided the same shall not interfere with the ordinary use, occupation and enjoyment of such streets and alleys." The mill race in question was constructed under that ordinance; at that time there was very little travel on Main street at the point where the race crosses it. It has since become quite a city thoroughfare; the evidence for the relator and defendant was somewhat conflicting as to the topography in 1875, but it leaves the impression that whilst the road was susceptible of travel in dry weather, there was a depression at that point, in which water was held when the river was high, which obstructed travel and rendered the place unsuitable for a road and especially for a city street. Cowgill & Hill built the bridges along the streets over the race in 1875. In 1881 the bridges needed repair, and a dispute arose between Cowgill & Hill and the city as to whose duty it was to make the repairs. This resulted in a proposition of Cowgill & Hill to pay the city $150, and be released from all obligation in that respect, which the city accepted by a resolution adopted by its counsel in regular session, and the money was paid accordingly. The city then proceeded to have the repairs made and sent the bills to Cowgill & Hill who paid them out of the $150 agreed on, and then they paid the balance of that sum,

$70 or $80, to the city treasurer. In 1887 the city passed a formal ordinance reciting the agreement, acknowledging the payment and ratifying and confirming the transaction. Afterwards in the same year it passed an ordinance to the effect that the proprietor of every mill whose race crossed streets should erect and keep in repair at his own expense suitable bridges, except at such places as would have required bridges if no mill race had been made. So far as the evidence discloses, $150 was not out of proportion to the amount necessary to keep the bridges in repair for several years. After the agreement of 1881 the city apparently acting in accordance with it assumed the duty of repairing the bridges, and neither Cowgill & Hill nor the present owner heard anything more of it until this suit arose. In 1895 the bridges were washed away by a flood and the city caused other bridges to be erected, not exactly in the places of the former, nor entirely in the streets, but at the side of each street, running a railing across the street at the vacant part on each side of the race, diverting the travel to the new bridges.

The defendant offered testimony to show that these new bridges were located in this way because the city contemplated building iron bridges there, and the present structures were to serve the public until the iron bridges should be built, but on objection of relator the evidence was excluded. Those bridges, at the date of the alternative writ, were serving all the purpose required in the use of the streets, rendering them reasonably safe and convenient.

At the request of defendant the court gave a declaration of law in the nature of an instruction to the effect that the ordinance introduced in evidence by the relator which was passed in 1887, after the ordinance of ratification, was invalid so far as it attempts to impair the effect of the contract evidenced by the resolution of the council in 1881,

and the ordinance ratifying the same. That was the only instruction or declaration given. The defendant asked the following, which were refused and exception taken:

"1. The court declares the law to be that under the pleadings and evidence, the finding and judgment should be for the respondent.

"2. The court further declares the law to be that, if the court finds from the evidence that at the time of suing out the alternative writ of mandamus in this case, there were constructed over defendant's mill race convenient and suitable bridges to accommodate the travel of the public in going and coming on Main street and Jackson street, the finding and judgment should be for respondent, although it may appear from the evidence that said bridges were constructed by the city of Carthage and were not constructed wholly on the line of said streets.

"3. The court further declares the law to be, that the contract and resolution of the city of Carthage with Cowgill & Hill, of date July 25, 1881, and the ordinance No. 76, passed and approved February 14, 1887, in consideration of the payment by Cowgill & Hill to the city of Carthage of the sum of $150, relieving said Cowgill & Hill from any duty to maintain or repair bridges across their mill race on Main and Jackson streets, and other streets, and its assuming the burden of maintaining and repairing such bridges, are valid and binding on the city.

"4. The court further declares the law to be, that if the court finds from the evidence that on the making of the contract by the city, with Cowgill & Hill, on the 25th day of July, 1881, the city of Carthage took possession and control of the bridges across the mill race of defendant, and accepted the same as public bridges in the city of Carthage, and assumed exclusive control of said bridges and maintained and repaired them from that time until the suing

State ex rel. v. Milling Co.

out of the alternative writ in this case, then the city of Carthage assumed the duty of maintaining and keeping said bridges in repair; and the finding and judgment should be for respondent.

"5. The court declares the law to be, that if it finds from the evidence that at some time prior to the suing out of the alternative writ in this case, the bridge across the mill race on Main street and Jackson street had been washed away by high water, and that afterwards and prior to the suing out of the writ in this case, the city of Carthage, by its council, officers and agents, replaced said bridges across said mill race, and that at that time said bridges were safe and convenient and accommodated the public in going and coming over said mill race, on said bridges, it was the duty of said city, in replacing said bridges, to place them where they would be most convenient for the use of the public in going to and fro on said street and across said mill race, and said city ought not now to be heard to complain that it had not replaced said bridges over said mill race in the center of said streets or that it had placed said bridges only partly in said streets."

The circuit court awarded the peremptory writ, and the defendant appeals.

I. As there was no declaration of law showing the theory on which the trial court based its judgment, we are somewhat at a loss to understand what the theory was. By refusing the second and fifth instructions the court seemed to hold that the fact that at the time the alternative writ was issued, there were convenient, safe and suitable bridges to accommodate the public using the streets, built by the relator, but not exactly in line of the street, was no defense. If there were such bridges, and the evidence was very conclusive of the fact, then the defendant's mill race did not in the language of the ordinance granting the right of way

"interfere with the ordinary use, occupation and enjoyment of such streets," and if that was the condition it makes no difference who built the bridges.    As to the peculiar location of the bridges, that was a matter entirely under the control of the city.    If for the purpose indicated in the evidence offered by defendant and excluded, that is to say, if the city designed erecting iron bridges at those points and preferred to have the wooden bridges where they would not interfere with the more permanent structures when the city got ready to build them or whatsoever the purpose the city may have had in locating the bridges as they were, it was a matter entirely in the city's power and defendant was in no way responsible.    Suppose these bridges had been built by the defendant and located as they are by direction of the city, would the defendant be amenable to this writ of mandamus? Those instructions indicated the correct view of the law and the fact being clearly shown was a complete defense.

II.    At the time this right of way was granted, Carthage was not the large city it now is, and these streets which are now great thoroughfares were, at the points where they are crossed by the mill race, little used, there were but little indications to show that they were streets at all, and for that reason perhaps the city authorities in drawing the ordinance, and Cowgill & Hill in accepting it, were not as particular as they would have been if they had foreseen the development, or as they would be now if a similar franchise were to be granted.    The whole grant is in these words: "That there shall be and it is hereby granted to H. Clay Cowgill and Frank Hill a way and right of way for their mill race where the same is now located and constructed over, across and through all streets and alleys now crossed by the same in said city; provided the same shall not interfere with the ordinary use, occupation and enjoyment of such streets and alleys."    The manifest meaning of that

*proviso* is that the race should be covered with bridges so as to allow the traffic of the streets to pass without obstruction, and that was done; whether thereafter the bridges were to be maintained by the owners of the mill race was a question between the city and the mill men in 1881, when the bridges needed repairs and that question was settled by the agreement mentioned. If it be conceded that Cowgill & Hill were bound to keep the bridges in repair still, if, when the bridges were in good condition, a flood came and washed them away, another question might arise as to whose loss it was. In State ex rel. v. Corrigan St. Ry. Co., 85 Mo. 277, and Kansas City v. Corrigan, 86 Mo. 67, it was held that the grant of a franchise to use the streets of the city for a railroad on condition that the company keep the street for a certain width in repair did not impose on the company the duty to reconstruct the street.

But we do not think it necessary to answer that question in this case, because whatever obligation Cowgill & Hill were under, if any, in reference to the bridges after their original construction, was discharged under the agreement of 1881 whereby for $150 which they paid, the city agreed to release them and assume that burden itself. That agreement is evidenced by the following from the records of the council proceedings of July 25, 1881: "Motion offered to accept proposition of Cowgill & Hill to pay the city one hundred and fifty dollars in consideration of which the city is to assume charge of and keep in repair the mill race bridges. Motion carried by the following votes: Ayes, Councilmen Stebbins and Tuttle; nays, Councilman Hedrick." This was ratified by an ordinance passed in due form in 1887.

On the part of relator it is contended that the agreement was void for the reason that contracts granting franchises could only be made by ordinance and altered only in the same way. We are not pointed to any provision of the

charter that makes such restriction, but even if there were such a provision, it would not bear out the conclusion attempted to be drawn from it. This is not an agreement granting a franchise or modifying a franchise already granted, it relates only to the keeping of the bridges.

At the time this charter was granted by the legislature, the necessity for throwing around such municipal acts the restrictions that now appear in some of our city charters, was probably not apparent; at all events, in this instance the power was given without such restriction, and the city was left in a great measure, free to exercise it as it might see fit. The difference between an act of the city by ordinance, and one by simple resolution, is thus expressed by BLACK, C. J., in Eichenlaub v. St. Joseph, 113 Mo. loc. cit. 402: "Where a charter commits the decision of a matter to the council, and is silent as to the mode of expressing the decision, it may be evidenced by resolution and need not be in the form of an ordinance:" The same doctrine is stated in Dillon on Municipal Corporations (4 Ed.), sec. 449. And in section 451, cited by counsel for the relator, the same writer says: "The assent of a municipal corporation to the variation or modification of a contract need not necessarily be expressed by the formal action or resolution of the common council; but it may be implied from acts relating to the contract work subsequent to the date of the contract; but where the contract is made by ordinance in the prescribed statutory mode, it can only be repealed or annulled in the same manner." From the last clause in the above quotation, it is argued for the relator that because this franchise was granted by ordinance, the obligation to maintain the bridges could be released only in that manner. But whilst this franchise was granted by ordinance, there was no statute requiring it to be done in that manner, and even if there had been, the agreement of 1881, in no sense repealed or

State ex rel. v. Milling Co.

annulled the ordinance, but was a new contract based on a new consideration, and there was no statute requiring such a contract to be made by ordinance. It is urged in the brief for relator that the resolution was not properly passed, that is, that it did not receive the approval of a majority of the council. The reply sets out the grounds on which it rests the charge that the resolution was invalid, but this is not one of them, and no such issue is tendered. But the objection is not well founded in fact. There were three of the council present, which was a quorum under the charter (art. 3, sec. 5), and two of them voted for the resolution; the mayor had a right to vote only in case of a tie. (Art. 4, sec. 4). The agreement did not impose on the city a duty not already imposed by law. The charter contains several provisions to this effect, among which we quote art. 8, sec. 1. "The city of Carthage shall, at its own proper expense, make, maintain and keep in repair all streets, roads and bridges within the limits of the city," etc. Therefore, even if Cowgill & Hill were bound to the city, the city was bound to the public to keep the bridges in repair, and as between them it was a subject concerning which the city had corporate power to contract.

We are cited to Rouse v. Somerville, 130 Mass. 361, to support the proposition that it was the duty of the owners of the mill race to keep the bridges in repair, and the city could not by contract assume that obligation. In that case the legislature of Massachusetts had imposed on the railroad company the duty of building and keeping the bridges in repair and had given the town no authority over it and it was held that because the town had no corporate power over the bridge, it could not by contract with the railroad company to keep the bridge in repair render itself liable to a person injured, for negligence in failure to do so. But that is no authority for the proposition in this case, for here the legis-

lature has given the city express power in the subject.

We see no reason, therefore, for holding that the proposition of Cowgill & Hill and its acceptance by the resolution of the city council was not a valid agreement. But if the agreement lacked anything in the formality of its execution that defect was cured by the ordinance which expressly ratified it. That a municipal corporation may ratify an act done in its name, which was within its corporate powers, but which was not done in the manner prescribed by law, is not questioned. "A municipal corporation is not bound by a contract made by its agent or officer, which the agent or officer had no authority to make. But if the contract is for a corporate purpose, and within the powers conferred upon the municipality by its charter, or by the general law, it may be ratified by the corporation and become binding upon it. So, also, contracts made in the name of a corporation before it has been chartered, or before it has received legislative authority to contract, may be ratified by the corporation after it has been incorporated or authorized to contract. . . . . . . . When the statutes prescribe a special mode in which alone a valid contract can be made by the municipality, and the contract is invalid, because of non-compliance with the statutory requirement, it must be observed in any act of ratification. Thus, where a corporation could only make a valid contract by ordinance, the ratification is required to be by ordinance, and can not be ratified by a subsequent resolution." [Tiedeman on Mun. Corp., sec. 170, and cases cited.] The contention that the ordinance of ratification was invalid because there was no new consideration to support it, arises upon a misapprehension of the nature of a ratification. It is no new contract and therefore needs no new consideration; it is simply adopting what has been done in its name, accepting or acknowledging the benefits and assuming the burdens.

The city's conduct in this matter, until this suit was brought, has been entirely consistent with its obligation under the agreement; it has kept the bridges in repair, and when the flood came and carried them away it replaced them with the present structures located so as to indicate a purpose, as suggested by the evidence offered and rejected, to put finer and better structures more in keeping with the Carthage of to-day than would be a duplication of the wooden bridges of 1875. It was a fair agreement, made with the mill people, they paid what they agreed, and now good faith and the law alike require that the city should stand up to the contract on its part. There is a constitutional question in this case which gives this court jurisdiction, but as the case is disposed of before that question is reached it is unnecessary to decide it. The evidence makes no case justifying the issuance of the peremptory writ. The judgment of the circuit court is reversed.

All concur.