ARKANSAS-MISSOURI POWER CORPORATION, a Corporation, ET AL., Appellants, v. CITY OF KENNETT, a Municipal Corporation, ET AL.— 159 S. W. (2d) 782.

Division Two, March 13, 1942.

174

*Patterson, Chastain & Smith, D. C. Chastain* and *Langdon R. Jones* for appellants.

176·

*Elbert L. Ford, Arthur U. Goodman, Jr.,* and *Robert B. Fizzell* for respondents; *Bowersock, Fizzell & Rhodes* of counsel.

*Ryland, Stinson, Mag & Thomson* for Baum-Bernheimer Company and First National Bank of Kansas City.

WESTHUES, C.—This is an appeal from a judgment dismissing plaintiffs' petition in which they sought to enjoin the city of Kennett and others from carrying out a contract and agreement concerning the sale of municipal electric light bonds in the sum of $139,000.00.

A number of taxpayers joined in the petition with the Arkansas-Missouri Power Corporation. The defendants in the case are the city of Kennett; Ben Cash, the mayor; Sam G. Fisher, the city clerk; Mrs. Nell Sexton, city treasurer; the members of the city council;

Baum-Bernheimer Co., a corporation engaged in buying and selling municipal bonds; First National Bank of Kansas City, Missouri; the ▮▮▮▮ Bank of Kennett and the Cotton Exchange Bank of Kennett. These banks were named defendants because the Bank of Kennett and the Cotton Exchange Bank had on deposit the funds the city received for the bonds and the National Bank of Kansas City had possession of the bonds as collateral on a loan from Baum-Bernheimer Company.

In the year 1933, the city of Kennett authorized the incurring of an indebtedness of $140,000.00 to build a Municipal Electric Light Plant. Lawsuits followed. [See Arkansas-Missouri Power Co. v. City of Kennett et al., 78 Fed. (2d) 911; Arkansas-Missouri Power Corp. v. City of Kennett, 113 Fed. (2d) 595; Arkansas-Missouri Power Corp. v. City of Kennett, 156 S. W. (2d) 913, 348 Mo. 1108.] Those interested in the history of the litigation are invited to read the above cases. The present suit involves matters which transpired in the year 1941. We may begin a discussion of the case by taking for granted that all proceedings pertaining to the bond issue were legal up to the time the city council proposed to sell the bonds, which was March 22, 1941. On that date the city council adopted the following resolution:

"Motion by A. C. Thrower, and seconded by Earl Russell, that the Mayor, Ben Cash, and the City Clerk, Sam G. Fisher, be and are authorized to sell to Baum Bernheimer Company, Kansas City, Missouri, $139,000 4% electric light bonds for not less than par and accrued interest."

At that time the city council had before it a bid of Baum-Bernheimer Company offering par and accrued interest from the date of the bonds to the date of delivery. At the bottom of the offer appears the following notation:

"Accepted This 22nd day of March, 1941.
"City of Kennett,
"Ben Cash,
"Mayor
"Sam G. Fisher,
"(Seal)          City Clerk."

Thereafter the mayor of the city, the city clerk, city attorney, and another took the bonds to Jefferson City and had them registered in the State Auditor's Office, whereupon the bonds were taken to Kansas City and delivered to Baum-Bernheimer Company, which company paid par and accrued interest for the bonds. Thereafter, on March 28, 1941, the mayor and the city clerk made the following report:

"Comes now Ben Cash, and Sam G. Fisher and makes the following report of the bond sale of the $139,000 Electric Light plant bonds.

"We, Ben Cash, Mayor, and Sam G. Fisher, City Clerk, of the City of Kennett, Missouri, do hereby certify that in pursuance to

authority granted by the City Council under date of March 22nd, 1941, that we did sell to Baum-Bernheimer Company of Kansas City, Missouri, the issue of Electric Light Plant bonds in the principal amount of $139,000 of said City of Kennett; said bonds being dated March 1, 1941, 4% numbered 1 to 139, both inclusive; all of said bonds, being in the denomination of $1,000 each, the purchase price of said bonds, being for par and accrued interest to date of delivery, which was March 25, 1941.

> "Ben Cash,
> "Mayor,
> "Sam G. Fisher,
> "City Clerk."

The city council on that day adopted the following motion:

"Comes now C. C. Redman, Councilman and makes motion that city accept report of sale of the $139,000 Electric Light Plant bonds, for approval of Council, said motion was seconded by Geo. I. Gilmore, Councilman, Whereupon Mayor Cash, put the motion and the following vote was recorded. G. I. Gilmore, A. M. Riggs, A. F. Harding, C. C. Redman, A. L. Lemonds, those voting no none. Whereupon the Mayor declared said motion duly carried and adopted."

On April 3, the plaintiffs filed the present suit. It may be noted here that the case of Arkansas-Missouri Power Corp. v. City of Kennett, 348 Mo. 1108, 156 S. W. (2d) 913, was then pending on appeal in this court but had not been decided.

The principal contention of appellants on this appeal is, that the sale of the bonds was void because the action of the city council, taken on March 22, with reference to the sale of the bonds constituted a delegation of authority to the mayor and city clerk to sell the bonds, and that such authority was vested solely in the city council and could not be delegated by it. We cannot agree with appellants. If only the wording of the motion of March 22, of the report of the mayor and the city clerk, and of the motion adopted by the city council accepting the report and approving the sale is to be considered, it would seem     that the mayor and city clerk were delegated a very limited authority. But when the actions of the city officials are considered in connection with the circumstances the only proper conclusion to be drawn is that the city council, on March 22, accepted the bid of Baum-Bernheimer Company and authorized the mayor and city clerk to deliver the bonds to that concern. Note that when the council adopted the motion of March 22, it had before it the bid of Baum-Bernheimer Company. The only function to be performed by the mayor and clerk was to have the bonds registered and delivered to the concern mentioned in the motion of the city council, purely a ministerial duty, and the only discretion left to them was to accept more money from Baum-Bernheimer Company

than was mentioned in the bid. A similar situation was before the Supreme Court of Kentucky in Frantz v. Jacob, 88 Ky. 525, 11 S. W. 654, l. c. 656. Note what the court said:

"It is urged that the discretion vested in the mayor as to whether the bonds shall bear interest at 5 or 4 per cent. is a delegation of legislative power, and therefore the ordinance is void. The council had fixed the maximum rate of interest at 5 per cent., but said to the mayor; 'If you can sell the bonds at a lower rate of interest it is your duty to do so.' . . .

"If the agent exceeds the authority given him by making the bonds bear a larger rate of interest than authorized by the ordinance, his act would be void: but, when he protects the interest of his principal by making a better bargain than authorized, his action is to be sustained, because it benefits the party for whom he is acting."

This holding was reaffirmed in Hunter v. City of Louisville, 208 Ky. 562, 271 S. W. 690, l. c. 692. The Supreme Court of the United States in Hitchcock v. Galveston, 96 U. S. 341, had before it the question of authority of a city council to construct sidewalks. The council had authorized the mayor and another to enter into contracts for such purposes. This was asserted to have been a delegation of authority, but at page 348 of 96 U. S. the court said:

"If the city council had lawful authority to construct the sidewalks, involved in it was the right to direct the mayor, and the chairman of the committee on streets and alleys, to make a contract on behalf of the city for doing the work. We spend no time in vindicating this proposition. It is true, the council could not delegate all the power conferred upon it by the legislature, but, like every other corporation, it could do its ministerial work by agents. Nothing more was done in this case."

That same language could be applied in the present case because the mayor and city clerk did nothing more than was directed to be done. Their actions were confirmed and approved by the city council on March 28. If a city has authority to enter into a contract and attempts to do so in an irregular manner the action may be ratified so as to render the contract legal. See State ex rel. City of Carthage v. Cowgill & Hill Mill. Co., 156 Mo. 620, 57 S. W. 1008, l. c. 1011, where the court tersely stated:

"We see no reason, therefore, for holding that the proposition of Cowgill & Hill, and its acceptance by the resolution of the city council, was not a valid agreement. But if the agreement lacked anything in the formality of its execution, that defect was cured by the ordinance which expressly ratified it. That a municipal corporation may ratify an act done in its name, which was within its corporate powers, but which was not done in the manner prescribed by law, is not questioned." .

See also State ex rel. City of Excelsior Springs v. Smith, 82 S. W. (2d) 37, l. c. 42, 336 Mo. 1104, l. c. 1115, as to necessity for city to act through agents. Appellants argue that a city cannot ratify a contract, and cite among other cases, General Mfg. Co. v. City of Portageville, 28 S. W. (2d) 119. But in that case the court held the contract to be void because the city had no authority in the first instance to enter into the particular contract since it had no funds to pay for the property attempted to be purchased; that therefore the city could not ratify the contract. But the court in that case recognized the principle that a city may ratify a contract irregularly entered into where the city had the power to so contract. See General Mfg. Co. v. City of Portageville, 28 S. W. (2d) 119, l. c. 120, where the court said:

"A contract by a city made with authority, but lacking in some way in its execution, may be ratified. [State ex rel. v. Milling Co., 156 Mo. 620, 57 S. W. 1008.]"

Appellants briefed and cited many cases under the point that a city council may not delegate authority vested in it to ▮▮ another. That may be conceded to be the law. But aside from the question of ratification it is our opinion that the sale of the bonds to Baum-Bernheimer Company was in fact made by the city council rather than by the mayor and the city clerk. The city council, after this suit was filed, by a *nunc pro tunc* entry, passed a number of resolutions to have the record of the city conform to what the council deemed actually occurred. Plaintiffs objected to the introduction of these records on the ground that the city council had no right to take any action after suit had been filed and the city had been served with a restraining order. Since we ruled as we did we need not discuss this question.

▮▮ This leaves us with only one more question in the case. Appellants say that the trial court erred in excluding evidence of expert witnesses as to the value of the bonds at the date of the purported sale.

Appellants contend that the evidence disclosed the bonds to have been worth approximately $20,000.00 more than the city received, and therefore had the city invited bids the taxpayers would have benefited by $20,000.00. This evidence is in the record and appellants are correct when they say that this being an equity suit this court may consider such evidence in passing on the merits of the case. Without discussing the question of whether a court of equity has the authority, absent fraud, to set aside a sale of bonds for inadequacy of price, where the bonds are sold at par, let us consider the evidence offered by appellants. The experts testified that taking into consideration the circumstances, such as the financial standing of the city of Kennett, the purpose of the bond issue, the rate of interest, etc., the bonds were of the value of about $20,000.00 above par. But most of these

experts were very evasive when questioned as to what effect the litigation then pending would have on the value of the bonds. One of these witnesses, however, was very frank about the matter. Note his evidence:

"We would not put out our money as long as the suit was pending. In arriving at my figures of the value of these bonds there was no consideration given to the fact that there was a pending suit."

A number of the other witnesses qualified their answer by saying that the value they placed on the bonds was on condition that a reputable law firm had given an unqualified opinion as to the validity of the bonds. No such opinion had been given in this case. The validity of the bonds was an issue in the previous suit. Note what this court said, 348 Mo. 1108, l. c. 1120, 156 S. W. (2d) 913, l. c. 919 (13):

"Finally, it is contended by the plaintiffs that the general conditions in the city have so changed since 1933 as to require a new submission of the bond issue proposition to the electorate."

That question was pending before this court when the sale of the bonds occurred. It is generally accepted that the public welfare may be best served by permitting competitive bids on all contracts where the taxpayers' money is to be used. However, in this case the city had waited on lawsuits over six years after the people had authorized the building of a municipal plant, and the litigation was not yet at an end. Had bids been invited, can a court say that the city would have obtained a better price? Or would more litigation have commenced before a bid could have been accepted? Under the circumstances we cannot condemn the action of the city council as unwise or arbitrary. Certainly appellants cannot take the position that the suit pending at that time, in which the appellant, Power Company, was plaintiff, was so trivial as not to affect the market value of the bonds.

The judgment of the trial court must be and is hereby affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.