PERKINS GALE *versus* THE INHAB'TS OF SOUTH BERWICK.

The inhabitants of a town cannot be legally assessed to pay a reward offered by the vote of a town for the apprehension and conviction of a person who has committed a murder therein; the contract of the town was therefore unauthorized.

ON STATEMENT OF FACTS.

This was an action of ASSUMPSIT to recover the amount of a reward offered by a vote of the defendant town, for the apprehension and conviction of the perpetrator of a murder that had been committed therein.

*In defence*, it was contended, that the town exceeded its authority in voting such offer of reward.

*Howard & Strout*, for the plaintiff.

It appears by the agreed statement, that a man had been murdered in South Berwick, and that the murderer was not known, or had escaped. That, to insure his detection and conviction, the inhabitants of the town, at a legal town meeting, authorized the selectmen to offer the reward claimed. And that the plaintiff is entitled to recover, if the defendants are responsible for the offer.

It was for the interest, peace and safety of the inhabitants, that the offender should be brought to justice and secured against further invasions upon them. They might well fear that he was lurking among them, seeking only other opportunities to strike down, in secret, other objects

of his jealousy, cupidity, or malevolence. They were justified in using prompt and efficient means to allay the fears and excitement of that community. Nay, they were bound to exert the right of self-protection to the utmost, by immediate action. *Offering rewards* for the detection of felons is known to be a most efficient measure for securing it. It became, as it were, a necessity, in this instance, springing from the moral sense, and self-respect of the inhabitants themselves. Good order, peace, health and common convenience of the inhabitants demanded it.

Although it may be true that towns are not authorized to make any contract for the payment of money which they are not authorized to raise money to discharge by taxation; yet they can raise money to indemnify its officers for a liability, which they may incur in good faith, in the discharge of their duties, even when they have exceeded their legal rights and duties, and where the town was under no previous obligation to indemnify such officers. *Nelson* v. *Milford*, 7 Pick., 18; *Bancroft* v. *Lynnfield*, 18 Pick., 566.

A town may raise money to pay for a public clock; to build a market-house; construct reservoirs, lamp posts, fences, and to purchase fire engines, &c., and generally, for such purposes as may be necessary and proper to preserve the peace, good order, health and common convenience of the inhabitants. *Hardy* v. *Waltham*, 3 Met., 163; *Allen* v. *Taunton*, 19 Pick., 485; *Spaulding* v. *Lowell*, 23 Pick., 71; *Willard* v. *Newburyport*, 12 Pick., 227; *State* v. *Merrill*, 37 Maine, 329; R. S., 1840, c. 5, § 22; R. S., 1857, c. 3, § 27, rule *second*.

In *Croshaw* v. *Roxbury*, 7 Gray, 378, the Court, per SHAW, C. J., held that the defendants were answerable for $500, the amount of reward offered, although the statute of Massachusetts, 1840, c. 75, authorized an offer of only $200, as a reward, by towns and cities. And it appears to have been so held by the Court, upon the ground, that the body of the inhabitants having made the offer, they were bound by it, although the statute conferred no authority for offer-

ing such a reward. That decision must have rested upon public policy and municipal independence in matters of that sort. The principles governing that case would control in this, even without any aid from statute provision. The Court there held, that the statute last cited imposed no restriction upon the body of the inhabitants in any town, as to the amount to be offered; and it cannot be pretended that any is put upon them by the statutes of this State.

*J. N. Goodwin*, for the defendants.

The opinion of the Court was drawn up by

APPLETON, C. J.—A murder having been committed in the defendant town, the inhabitants, at a legal meeting, directed the selectmen to offer a reward for the detection of the murderer, which they did. The murderer was detected, arrested and convicted through the agency of the plaintiff, who, being entitled to the reward according to the terms upon which it was payable, brings this suit therefor. As the money to pay must be assessed and collected, the inquiry arises, whether the defendants have any power to assess and collect for such purpose, as, if they have not, they can have none to make a contract which, if performed, would require such assessment and collection.

The power of towns to raise money, is given by R. S., 1857, c. 3, § 26, and is in these words:—"The qualified voters of a town, at a legal town meeting, may raise such sums as are necessary for the maintenance and support of schools and the poor; for making and repairing highways and town ways and bridges; for purchasing and fencing burying grounds; for purchasing or building and keeping in repair a hearse and house therefor for the exclusive use of its citizens; *and for other necessary town charges.*" The words, "other necessary town charges," do not constitute a new and distinct grant of indefinite and unlimited power to raise money at the will and pleasure of a majority. They embrace all incidental expenses arising directly or indirectly in the due and legitimate exercise of the powers conferred

upon towns. Accordingly, they have ever received a liberal construction. Thus, in *Willard* v. *Newburyport*, 12 Pick., 227, it was held that a town has authority to provide for a clock, and to assess the expense thereof upon its inhabitants. So towns are authorized to raise money to repair fire engines, used for the purpose of extinguishing fires, as in *Allen* v. *Taunton*, 19 Pick., 485 ; and to appropriate money for the construction of reservoirs, to supply water for their use, as in *Hardy* v. *Waltham*, 3 Met., 163 ; or to build a market-house, as in *Spaulding* v. *Lowell*, 23 Pick., 71.

But, while towns may undoubtedly contract any and all liabilities, arising in the performance of their municipal duties, whether directly or impliedly imposed, they cannot transcend their legal obligations and incur liabilities neither directly nor indirectly arising in the course of their performance. Thus, in *Tash* v. *Adams*, 10 Cush., 252, it was held that a town could not lawfully appropriate money to commemorate the surrender of Cornwallis. In *Hood* v. *Lynn*, 1 Allen, 103, it was decided, that a town could not lawfully raise money for the celebration of the fourth of July. In *Bussey* v. *Gilmore*, 3 Greenl., 191, the raising a tax for the discharge of a contract, entered into by a town with the corporation of a toll bridge, for the free passage of the bridge by the citizens of the town, was held to be illegal.

The power given by statute to towns to raise money for " necessary charges" extends only to those which are incident to the discharge of corporate duties. *Bussey* v. *Gilmore*, 3 Greenl., 191. It is no part of the duty of a town to take charge of, or supervise, the criminal proceedings which may be instituted in behalf of the State, unless when such duty is specifically imposed. Towns are under no legal obligation to aid in the detection or conviction of offenders. The enforcement of the criminal law is entrusted to its appropriate officers. The authority to offer rewards for the apprehension of offenders, by R. S., 1857, c. 138, § 4, is conferred, in certain cases, upon the Governor. No

power is given to towns, to raise money for their detection or conviction, by any statute of this State, and none can exist by implication. In Massachusetts, by statute, 1840, c. 75, this power, to a limited extent, is conferred. The vote of the town was unauthorized and in excess of their corporate powers, and is not binding. *Hooper* v. *Emery*, 14 Maine, 375; *Stetson* v. *Kempton*, 13 Mass., 272.

*Plaintiff nonsuit.*

RICE, CUTTING, KENT, DAVIS and WALTON, JJ., concurred.