JOHN O'DELL et al., Respondents, v. C. T. SCRANTON et al., Appellants.

Kansas City Court of Appeals, June 3, 1907.

1. FOURTH-CLASS CITIES: Disorderly Houses: Gambling: Liquor Selling. Gambling houses and illicit liquor shops are disorderly houses and a fourth-class city has power to suppress the same.

2. ———: ———: ———: ———: Detectives. Johnson, J.: The suppression of such disorderly houses is simply a police measure and the city has power to employ outside means such as detectives to accomplish the suppression, though where the offense should be general and not local such authority does not exist. [Cases considered and distinguished.]

3. ———: ———: ———: ———: ———: Ratification: Johnson, J.: The mayor of a fourth-class city employed a private detective to ferret out and secure the conviction of the keepers of disorderly houses, which was successful. He afterwards reported his action to the board of aldermen, together with his bill of expenses. The board allowed the bill and had warrant issued therefor. *Held*, the board had the authority to ratify and did ratify the act of the mayor.

4. ———: ———: ———: ———: ———: ———. At the time such warrant was issued there was not sufficient money in the treasury to pay it. *Held*, under section 5954, Revised Statutes 1899, the warrant was void. Broaddus, P. J., and Ellison, J., concur.

O'Dell v. Scranton.

Separate Opinion.

5. ———: ———: ———: ———: ———: Construction. Ellison, J.: The rule for the intrepretation of municipal charters is more strict than that employed in the construction of statutes generally, and when a subject is covered by express provision an implied provision is excluded; so a fourth-class city has no power to employ special detectives in addition to its regular force to detect and suppress disorderly houses.

6. ———: ———: ———: ———: ———: Ordinances. Ellison, J.: It would seem, if the city possess such power, an ordinance would be necessary to authorize its exercise by the mayor.

7. ———: ———: ———: ———: ———: Ratification. Ellison, J.: On a review of the petition it is held that no ratification is pleaded and as the original act should have been authorized by ordinance so it would seem that the ratification should be effected by an ordinance.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Lozier, Morris & Atwood* for appellants.

(1) Cities may exercise, not only the powers expressly conferred, but those necessarily or fairly implied in or incident to the express powers and those indispensably necessary for the accomplishment of the purposes of corporate existence. The act of the city of Hale in issuing the warrant in question was the legitimate and reasonable exercise of a discretionary power. R. S. 1899, secs. 5957, 6000; Tiedeman on Municipal Corporations, secs. 110, 111, 112, 115, 135; Dillon on Municipal Corporations (3 Ed.), sec. 89; St. Louis v. Tel. Co., 96 Mo. 623. (2) The doctrine applied to suppression of gambling and disorderly houses. Tarkio v. Cook, 120 Mo. 1, 9; R. S. 1899, sec. 5958; 1 Bishop's New Criminal Law, secs. 1113, 1115; U. S. v. Elder, 4 Cranch C. C. 507; State v. Buckley, 5 Harring (Del.) 508; 5 Am. and Eng. Ency. of Law p. 702; State v. Williams, 30 N. J. L. 102; Huber v. State, 25 Ind. 175; Meyer v. State,

42 N. J. L. 145; Tiedeman on Mun. Corp., sec. 122; Railroad v. Marion County, 36 Mo. 333; Walker v. Linn County, 72 Mo. 650, 653. (3) The doctrine illustrated in payment of rewards for the apprehension of criminals. Borough of York v. Forscht, 21 Pa. St. 391; Crawshaw v. Roxbury, 7 Gray (Mass.) 374; Loring v. Boston, 48 Mass. 409; Lee v. Trustees, 37 Ky. 28. (4) In the reasonable exercise of these discretionary or implied powers, courts will not interfere. 1 Dillon on Municipal Corporations (3 Ed.) sec. 94; 15 Am. and Eng. Ency. Law (1 Ed.), p. 1046; St. Louis v. Boffinger, 19 Mo. 15; Knapp v. Kansas City, 48 Mo. App. 485; State ex rel. v. Schweickardt, 109 Mo. 511; Taylor v. Carondelet, 22 Mo. 105; Skinkers v. Heman, 64 Mo. App. 450; White v. Railroad, 44 Mo. App. 542; Page v. St. Louis, 20 Mo. 142; State ex rel. v. Mason, 153 Mo. 44; Cooley on Taxation (2 Ed.), p. 681. (5) The city of Hale can legally indemnify its mayor against a liability incurred by him in the bona fide discharge of his duties, in an effort to suppress lawlessness and enforce the municipal ordinances, and can lawfully reimburse him for any moneys reasonably expended, for this purpose, even though he may have exceeded his authority. Mechem on Public Officers, sec. 879; Tiedeman on Mun. Corp., sec. 115; Dillon on Mun. Corp., sec. 147; Beach on Pub. Corp., sec. 647; 19 Am. and Eng. Ency. of Law (1 Ed.), pp. 540, 541; State ex rel. v. St. Louis, 174 Mo. 125; Roper v. Lauringsburg, 90 N. C. 427; Fulls v. Groton, 77 Mass. (11 Gray) 340; Chicago v. Williams, 80 Ill. App. 33; Ables v. Ingram County, 4 N. W. 206.

*Jones & Conkling* for respondents.

(1) Cities can only exercise such powers as are expressly conferred, by the charter; those necessary or fairly implied, in or incident to the powers expressly granted; those essential to the declared objects and purposes of the corporation — not simply convenient but

indispensable. R. S. 1899, sec. 5957; R. S. 1899, sec. 6000; Dillon on Mun. Cor., sec. 89; Trenton v. Clayton, 50 Mo. App. 535; Joplin v. Leike, 78 Mo. App. 8; Cape Girardeau v. Fougue, 30 Mo. App. 557; Independence v. Cleveland, 167 Mo. 384. (b) A municipal corporation cannot create new offices and new departments. McQuillin on Municipal Ordinances, sec. 56; Hoboken v. Harrison, 30 N. J. L. 73; White v. Tallman, 28 N. J. L. 67; People v. Fire Company, 23 Hun 317. (3) It is not within the power of a municipal corporation to employ detectives or offer rewards for the apprehension of criminals unless expressly authorized by its charter or some provision of the statute. Smith on Mun. Cor., 686, 689; Patton v. Smith, 70 Ky. (14 Bush) 324. (4) The warrant issued to Ballew was issued in violation of law. The board had no authority to issue it. It was void. R. S. 1899, sec. 5954. (5) The duties, powers and privileges of officers of every character in any way connected with the city government not herein defined shall be prescribed by ordinance. R. S. 1899, sec. 5921; Unionville v. Martin, 95 Mo. App. 35; Cape Girardeau v. Fougue, 30 Mo. App. 551; Thomas v. Boonville, 61 Mo. 282; Saxton v. St. Joseph, 60 Mo. App. 158; Saxton v. Beech, 50 Mo. App. 488; Neil v. Gates, 152 Mo. 594; St. Louis to use of Murphy, 43 Mo. 403; St. Joseph, ex rel. v. Rilshire, 47 Mo. App. 130.

JOHNSON, J.—This action was brought in the circuit court of Carroll county by certain taxpaying citizens of Hale, a city of the fourth class, to enjoin the issue and payment of a certain warrant. Defendant Ballew is the mayor of the city; defendants Selby, Walston and Tracy comprise the board of aldermen, and defendant Scranton is the treasurer. They filed answer and motion to dissolve the writ of injunction; afterward, plaintiffs demurred to the answer and on

hearing, the demurrer was sustained and defendants refusing to plead further, the injunction was made perpetual and defendants appealed. There are two counts in the petition, but the cause of action pleaded in the second count is not made a subject of controversy here by the parties, and our sole concern is with the issues involved in the cause pleaded in the first.

The facts before us for consideration thus may be stated: The ordinances of the city relating to the regulation and control of the sale of intoxicating liquors and to the suppression of gambling were being secretly and continuously violated to an extent subversive of the peace and good order of the community, but owing to the manner of these violations of law, the constituted authorities of the city were unable to discover the violators and to break up the practices. The mayor, to meet the exigencies of the situation which confronted them, employed two persons to act as detectives in ferreting out these nuisances and in obtaining evidence against those who maintained them, so that the disorderly places might be suppressed and the offenders punished. In this, he acted without formal authority from the board of aldermen, for the reason that the giving of such authority necessarily would warn the lawbreakers and tend to defeat the object in view. The efforts of the detectives thus employed resulted in the discovery of the disorderly places, their suppression by the city, and in the arrest and conviction of a number of persons who had violated the ordinances. Among the latter was the proprietor of a clandestine liquor shop who had been selling intoxicating liquors without a license, and a number of gamblers connected with secret gambling places. Fines aggregating one hundred and seventy-five dollars were collected from the gamblers and a fine of three hundred and fifty dollars assessed against the keeper of the illicit dramshop. The compensation earned by the detectives for their services

amounted to two hundred and nineteen dollars, and this sum was paid to them by the mayor who, thereafter, reported what he had done to the board of aldermen. Thereupon the board, in regular session, formally ratified and approved the action of the mayor and issued to him a warrant on the treasurer for the sum of two hundred and nineteen dollars to reimburse him the amount so expended. At the time this was done, the available funds in the treasury amounted to but $185.50 —not enough to pay the warrant in full. Before this action was brought, the mayor presented the warrant to the treasurer and received thereon the said sum of $185.50. The remainder was unpaid when the writ of injunction was served on defendants.

I. The fact that the mayor incurred the liability in question without formal authority from the board of aldermen will be disregarded for the present, and the first part of our discussion will deal with the question of the power of a city of the fourth class to make a contract with private persons for services to be rendered in the detection and punishment of offenses against the municipal ordinances.

Approaching the subject from the standpoint that the ratification by the board of aldermen related back and clothed the mayor from the beginning with all the authority that could have been conferred by ordinance in the first place, the fundamental principles by which we are to be guided are aptly expressed in this quotation from Dillon on Municipal Corporations (section 89, vol. 1, 4th Ed.): "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable. Any fair, reasonable doubt

concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." Recognition of the soundness of these principles has been so general in this and other jurisdictions, that we deem it unnecessary to cite other authorities to sustain them.

It is conceded the statutes relating to cities of the fourth class do not contain an express grant to such municipalities of the power to employ other agencies, for the detection of violations of the municipal laws and for the apprehension of the violators thereof, than those afforded by the constituted machinery of the city government. But, it is argued by defendants that the right to exercise such power is a necessary and indispensable incident to the delegation of legislative jurisdiction. In other words, when the Legislature of the State delegated to each city of the fourth class the power to deal as a legislature with certain classes of subjects peculiarly of local interest and to prescribe and inflict penalties for violations of the ordinances it might enact with reference thereto, the delegated power, of necessity, was as broad as that originally possessed by the delegating authority.

Preliminary to a consideration of this proposition, let us see what are the express grants on which is founded this claim of incidental power. Pertinent sections of the statutes (Revised Statutes 1899) are as follows:

"Section 5957. The mayor and board of aldermen of each city governed by this article shall have the care, management and control of the city and its finances, and shall have power to enact and ordain any and all

ordinances not repugnant to the constitution and laws of this State, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same.

"Section 5958. The board of aldermen shall enact ordinances to prohibit and suppress houses of prostitution and other disorderly houses and practices, including gambling and gambling houses, and all other kinds of public indecencies, etc.

"Section 6000. For any purpose or purposes mentioned in the preceding sections, the board of aldermen shall have power to enact and make all necessary ordinances, rules and regulations; and they shall also have power to enact and make all such ordinances and rules, not inconsistent with the laws of the State, as may be expedient for maintaining the peace and good government and welfare of the city and its trade and commerce; and all ordinances may be enforced by prescribing and inflicting upon its inhabitants, or other persons violating the same, such fine not exceeding one hundred dollars, and such imprisonment not exceeding three months, or both such fine and imprisonment, as may be just, for any offense, recoverable with costs of suit, together with judgment of imprisonment until the fine and costs are paid or satisfied; and any person committed for the non-payment of fine and costs, or either, may be compelled to work out the same as hereinbefore provided: *Provided,* that such city shall have power, in any case wherein the penalty for an offense is fixed by statute, to affix the penalty by ordinance, and no other, for the punishment of such offense, except that imprisonments, when made under city ordinances, may

be in the city prison or workhouse instead of the county jail.

"Section 5924. The mayor and police judge shall be a conservator of the peace and shall have exclusive original jurisdiction to hear and determine all offenses against the ordinances of the city," etc.

Under these provisions, express power is given for the establishment and maintenance of municipal courts to try and determine causes arising from the violation of municipal ordinances, for the suppression by ordinance of disorderly places that menace the peace and morals of the community, and for the exercise of such incidental rights as may be indispensable to the proper and effectual performance of the principal powers conferred. Gambling houses and gambling are expressly classed as "disorderly houses and practices" and, though no special reference is made to illicit dramshops, we are of opinion that a place where intoxicating liquor is habitually sold in violation of law is to be regarded as a nuisance, and as such, should be classed among disorderly houses. [5 Am. and Eng. Ency. Law (1 Ed.), 702; State v. Williams, 30 N. J. L. 102; Huber v. State, 25 Ind. 175; Meyer v. State, 42 N. J. L. 145.]

Clearly the city of Hale, as a city of the fourth class, possessed the power to enact ordinances for the suppression of illegal dramshops and gambling houses, and for the punishment of those who indulged in the practice of maintaining such pests, or of frequenting them. And, as the city had enacted ordinances for the suppression of such places, and its officers had good reason to believe these ordinances were being secretly violated and that the constituted machinery of the city was inadequate to the task of coping with the evil, we revert to the question of the power, if any, possessed by the authorities to enlist on behalf of the city the co-operation of outside agencies to discover the wrong-doers, so that they might be brought to punishment. As

a conservator of the peace, it was the duty of the mayor to employ all reasonable and lawful means to bring about a proper and efficient enforcement of the laws of the city. That the marshal, by reasonable diligence, was unable to discover the participants in unlawful practices which the mayor had good reason to believe existed, would not have afforded a sufficient excuse to the latter officer for giving up the struggle with the corruptive and demoralizing forces of disorder. The same may be said of the board of aldermen. Municipal officers, whether they belong to the executive or legislative departments of government, should provide efficient legislation against practices of a pronounced immoral tendency and be diligent and thorough in the enforcement of the laws they make. Law-abiding citizens can entertain no other feeling than that of contempt for public officers who, by their conduct, acknowledge their impotency to combat interdicted evils.

It goes without saying that the means employed on behalf of the city must be confined to those which the officers may employ under the charter, but it by no means follows that because the charter is silent on the subject that no instrumentalities may be used except those afforded by the municipal organization. It is a maxim that "in statutes, incidents are always supplied by intendments; in other words, whenever a power is given by a statute, everything necessary to the making of it effectual is given by implication; for the maxim is: *Quando lex aliquid concedit, concedere videtur et id, per quod devenitur ad illud.*" [Potter's Dwarris on Statutes and Constitutions, 123.] The opposite of this doctrine would involve the solecism that a grant of power may be conferred and yet denied because of a failure to prescribe a method by which it is possible to exercise it; or, that the failure to specify in the grant all of the means by which it may be exercised, of itself, will curtail the power even to the point of its complete emascu-

lation. This, not only would be illogical, but in its application to the case in hand, would hold for naught the plain legislative intent evidenced in the statutes quoted. Clearly the Legislature intended to confer on cities of the fourth class complete power to deal with the subject of the suppression of disorderly houses as an indispensable police regulation. It did not intend to cut the power in two and give the city a moiety thereof, yet that would be the result should we hold that the city was restricted to the use of such means only as the Legislature had specifically provided. In providing for the establishment of municipal courts and a police department, we apprehend no thought was entertained that these instrumentalties should be the only ones available.

For the apprehension, trial and punishment of criminals who violate the general laws of the State, we have courts, sheriffs, prosecuting attorneys and other officers, but no one will deny that the power resides in the Legislature to authorize by statute the employment of detectives or the offering of rewards for the detection and conviction of criminals who successfully elude the constituted officers. This power may be delegated, and it is more consonant with reason to say that when the State Legislature delegated to municipal Legislatures the function of enacting laws respecting specific subjects, it invested the latter bodies with all of the legislative powers connected with such subjects, than to say that a part of such powers was withheld. This being true, a municipal legislature has the same right to offer rewards or to employ assisting agencies for the detection and punishment of those who break its laws as has the State Legislature to make similar provision for the apprehension of those who break the general laws of the state. In Crawshaw v. City of Roxbury, 7 Gray 374, the Supreme Court of Massachusetts held that a statute limiting the power of the mayor and aldermen in offering rewards of a certain amount did not operate to restrain

the city council as the representatives of the whole body of the people from offering a greater amount for the detection and conviction of any person who should set fire to a building with felonious intent. In Borough of York v. Forscht, the Supreme Court of Pennsylvania held: "It is within the legitimate province of the burgesses of a town to offer rewards for the detection of offenders against the general safety of its inhabitants." And Dillon, in his work on Municipal Corporations (Vol. 1, section 139) inclines to the view that "the governing body of a municipal corporation (which has express power to protect the property and promote the welfare of its inhabitants) may offer a reward for the detection of offenders against the general safety of its people, as, for example, those guilty of the crime of arson within the corporate limits," though he observes that "the contrary doctrine has also been held."

On the other hand, we are cited by plaintiffs to a number of authorities which we find it necessary to review briefly. In Smith on Municipal Corporations (Vol. 1, sections 685, 686), after reviewing the Massachusetts and Pennsylvania cases to which we have referred, it is observed that "with the exceptions noted in the preceding section, the decisions are unanimous, and the purely implied power to tax the inhabitants for the apprehension of criminals is not only denied, but charter provisions are strictly construed so as to exclude it." The authorities cited sustain the conclusion of the learned author to the extent only of denying the power of a city to offer a reward for the apprehension of a person who has committed a crime against the general laws of the State, but they do not support the idea that such power does not obtain where the reward offered is for the detection of offenders against the municipal ordinances. Thus, in Potter v. Stephens, 14 Bush 324, the treasurer of the city of Covington embezzled funds belonging to the treasury and absconded. The city offered a re-

ward for his apprehension and conviction, but the court of appeals held, in an injunction suit brought by taxpayers, that the city was without power to create the liability. We are much impressed with the reasoning in that case. In substance, it was said that the crime which the treasurer committed was not one against the city of Covington any more than the larceny of one's goods or the forging of his name is an offense against him; that it was an offense against the sovereign authority of the State and not against the individual or local community; that "it is not a matter in which the local public have an exclusive or peculiar interest as distinguished from the general public. The offender, when arrested, must be tried under the laws of the State by the judiciary of the State. It is no more or less an offense against the laws of the State because the local public of Covington was pecuniarily injured than if the same injury had been to one of its citizens or to a bank located within the limits of the city. Finally, the denial of the power of the city officers to incur the liability on behalf of the city was based on the ground that "no power can be implied in favor of a corporation *which does not pertain to matters of a local character which peculiarly concern the local public and without which those local affairs committed by the State to the corporation cannot properly be attended to.*" And, in commenting on the Pennsylvania and Massachusetts cases, it was said: "In the former case (Pa.) the court did not discuss the question of the power to offer the reward, merely remarking that 'it is within the legitimate province of the burgesses to offer rewards for the apprehension of offenders against the safety of the inhabitants;' in the latter case (Mass.) the reward was for detecting persons who should, thereafter, be guilty of the crime of arson within the limits of the city, *a simple police measure, as legitimate as the employment of police to guard the inhabitants and their*

*property against violators of law."* Thus it will be observed that instead of being an authority against the power claimed in the present case, the decision under consideration recognizes the power of a municipality to employ outside aid in the proper enforcement of its police regulations.

In Board of Commissioners v. Bradford, 72 Ind. 455, a county board offered a reward for the apprehension and conviction of a person charged with felony. The power was denied on the ground that "the law confers no power and enjoins no duty upon the board of commissioners of a county to aid in the arrest, prosecution or conviction of a person charged with the commission of crime, either by an offer of reward or by the employment of detective or professional skill." So in this State, but for section 2474, Revised Statutes 1899, a county court would be without power to offer a reward for the detection and conviction of a person charged with the commission of a crime, for the reason that the sole power to provide for the offering of such rewards is vested originally in the Legislature, and until that power is delegated, either by express enactment or by the grant of legislative functions, it cannot be exercised. In Gale v. Inhabitants of South Berwick, 51 Me. 174, the city offered a reward for the detection and conviction of one who had committed a murder. Held that "it is no part of the duty of a town to take charge of, or supervise, the criminal proceedings which may be instituted in behalf of the State, unless such duty is specifically imposed. Towns are under no legal obligation to aid in the detection or conviction of offenders; the enforcement of the criminal law is entrusted to its proper officers. The authority to offer rewards for the apprehension of offenders is conferred in certain cases upon the governor. No power is given to towns to raise money for their detection or conviction, by any statute of this State, and none can exist by implication."

So in Winchester v. Redmond, 93 Va. 711, the court said: "The offer of a reward for the apprehension and conviction of an offender against the criminal law of the State is the exercise of a State power and is foreign to the objects and purposes of a municipal corporation." And in Crofut v. Danbury, 65 Conn. 294, it was held that the city was without power to offer a reward for the arrest and conviction of a person charged with arson and for the detection and conviction of parties who attempt the crime in the future, for the reason that the offense was against the State and not against the city. The apparent conflict between the latter case and Crawshaw v. City of Roxbury, 7 Gray, supra, and Patton v. Stephens, 14 Bush, supra, does not involve the question of the authority of a municipality to deal with local offenses but consists of a difference of opinion relative to the classification to be made of apprehended future attempts to commit acts of incendiarism, the Connecticut court holding that such attempts would be offenses against the State only, while the Massachusetts and Kentucky courts appear to think the prevention of such crimes a matter of local as well as general concern, and as such, fell within the scope of the powers and duties of the municipal authorities. With this difference of opinion, we have no present interest.

We have taken pains to review these various cases for the purpose of showing that in their relation to the fundamental principles under consideration, there is no real conflict among them, and many of the text writers have erred in ranging on one side the Massachusetts and Pennsylvania courts and on the other, courts whose decisions we have just discussed. The principle to be deduced from all of them is that where a crime has been committed against the sovereign authority of the State, the municipality in which it has been committed cannot be said to possess any special interest in the detection

126 App—3

and punishment of the criminal; and therefore, as the offense, except, perhaps incidentally, is not against the laws of the city, no power can be implied in the city to offer a reward for the capture and conviction of the criminal. But on the other hand, where the offense committed is against the local laws, and therefore, one in which the inhabitants of the city have a peculiar and special interest, the power inheres in the legislative body of the city to offer a reward for the detection and conviction of the offender. And if this be true as to completed offenses, *a fortiori* must it be true as to a continuing offense—one which if not suppressed, will go on in its work of corrupting the youth and manhood of the community and in breeding contempt and defiance of the laws. As to such offenses, the problem of their suppression becomes a simple police measure, and the employment of outside means, as was well observed in the Kentucky case, is "as legitimate as the employment of police to guard the inhabitants and their property against violators of the law."

On this branch of the case, we conclude that it was within the power of the legislative department of the city to authorize the mayor to employ the detectives.

II. We have already said enough to indicate that we entertain the view that the mayor, in employing the detectives on his own motion, acted without sufficient authority, since the power in question was lodged exclusively in the legislative branch of the city government; and, had the board of aldermen refused to ratify the act of the mayor and to recognize his claim as a just demand, the city would have incurred no liability. [Abels v. Ingham Supervisors, 42 Mich. 526.] But, in the exercise of its discretionary powers, the board ratified the action of the mayor, and by formal act, bound the city to reimburse him. The rule stated in Dillon on Municipal Corporations (4th Ed., sec. 463, vol. 1) has been

generally accepted and followed: "A municipal corpor-
ation may ratify the unauthorized acts and contracts of
its agents or officers which are within the scope of the
corporate powers, but not otherwise." [Dillon on Mu-
nic. Corp., section 139; Mechem on Public Officers, sec.
529, 534, 535, 545 and 547; Bishop on Contracts, sec.
995; State ex rel. v. Milling Co., 156 Mo. 620; Devers v.
Howard, 88 Mo. App. 253; Crawshaw v. City of Rox-
bury, supra.] The ratification by the board was the
legal equivalent of an enactment preceding the employ-,
ment, and under the views expressed, we would hold the
city bound by the warrant issued but for the existence
of the ground of invalidity about to be noticed.

III. In the exercise of the power in question, the
city was restricted by the following provision in its
charter (section 5954, R. S. 1899) : "No money shall be
paid out of the treasury except on a warrant signed by
the mayor and attested by the city clerk. No warrant
shall be drawn upon the treasurer, nor shall any ordin-
ance appropriating money be passed unless there is an
unexpended balance to the credit of the city in the fund
in the treasury upon which such warrant is drawn, to
meet such ordinance." The fact is conceded that when
the act of the mayor was ratified by the board and the
warrant was drawn, the funds in the treasury that could
be used for its payment were insufficient for that pur-
pose. The warrant was for the sum of two hundred and
nineteen dollars, and the money in the treasury amount-
ed to but one hundred and eighty-five dollars and fifty
cents. The board, therefore, had no power to issue the
warrant and its act, in so doing, must be held void.
The purpose of the statute under consideration is in the
highest degree salutary. It is to prevent cities of this
class from going into debt.

With this admitted fact before him, the learned
trial judge was right in sustaining the demurrer to the
answer, and as defendants declined to plead further,

properly entered judgment making the injunction per-
petual. The judgment is affirmed.

. *Broaddus, P. J.,* and *Ellison, J.,* concur in para-
graph 3 and in the result.


SEPARATE OPINION.


ELLISON, J.—In view of the final conclusion ex-
pressed by Judge JOHNSON in the last division of his
opinion, it will be seen that the points as to the power
of the city and of ratification, which he so well discus-
ses, are not in the case. But in order to avoid an under-
standing that his views are those of the court it is well
enough to state reasons for refusal to assent.

The town of Hale had a population at the last cen-
sus of between six and seven hundred people. It is what
our statutes designate as a city of the fourth class and
the charter containing its powers as a municipal corpor-
ation is found in article 5, chapter 91, Revised Stat-
utes 1899. The mayor of the town employed and paid
two detectives to assist in suppressing the sale of liquor
and gambling within the limits of the town, which was
contrary to and in violation of a town ordinance. Af-
terwards the mayor reported his acts (whether verbally
or in writing is not alleged) to the council and that body
ordered the warrant in controversy to reimburse the
mayor the sum he paid the detectives. There was no or-
dinance or resolution ordering the warrant, nor ratify-
ing the mayor's employment. It is, however, alleged
that the council is willing to ordain such an ordinance.
The question presented by the demurrer to the defend-
ants' answer to plaintiffs' bill to enjoin payment of the
warrant is to be treated, in the first instance, as one
purely of power conferred or not conferred by the char-
ter. If it has been conferred, the further question would
then arise whether it has been exercised in a lawful man-
ner.

In the City of Independence v. Cleveland, 167 Mo.

384, the following statement of the law as written by
Judge DILLON in his work on Municipal Corporations
(vol. 1, sec. 89) is set out and approved: "It is a gen-
eral and undisputed proposition of law that a municip-
al corporation possesses and can exercise the following
powers and *no others*: first, those granted in express
words; second, those necessarily or fairly implied in or
incident to the powers expressly granted; third, those
essential to the declared objects and purposes of the
corporation—not simply convenient, but *indispensable*.
Any fair, reasonable doubt concerning the existence of
power is resolved by the courts *against* the corporation,
and the power is denied."

It seems to me that the words I have italicized in
this quotation, when applied to charters of cities of the
fourth class demonstrate that such municipality has no
power to employ detectives to aid in enforcement of or-
dinances for suppressing illegal sale of liquor or gamb-
ling. It is conceded that there is no express power
named in the charter. We must, therefore, see if the
power is necessarily implied, or whether it is indispensa-
bly essential to the declared object and purpose of the
corporation. To exist as an implied power it must be
*clearly* implied, for if there is any doubt about it such
doubt is resolved against the exercise of the power. In
Butler v. City of Milwaukee, 15 Wis. 493, the court said
that "Implications of authority in bodies corporate,
more especially those created for municipal purposes,
should be clear and undoubted, and the party claiming
through them should be able to point them out with cer-
tainty and precision. The fact that he cannot is con-
clusive that they do not exist. Mere general argument
drawn from the convenience of possessing a power un-
der certain circumstances in case of emergency—conclu-
sions that, if possessed, it might be beneficially exercised,
are very dangerous sources of corporate authority. It
was with such that counsel was obliged to present this

case. Implications spring from the necessities of some power actually conferred, and not from notions of what would be convenient or expedient under particular circumstances." It should be borne in mind that the rule for the interpretation of municipal charters is more strict than that applied to statutes generally and renders the rule applied to the latter often inapplicable.

From the elaborate express provision made by the charter for the enforcement of the ordinances for suppressing vice in the municipalities of the State of the fourth class, it would appear to be manifest that no power by implication as claimed in this case can be said to be conferred within the bounds of the rules above laid down—rules stated in language of the same meaning in all the books which treat of the subject. It would seem to be clear that on this subject the legislature has left nothing to implication, for it has expressly provided in the charter for *complete* official agencies whereby laws against such vices may be ordained *and enforced.* A council may ordain the ordinances, and a police court, with a marshal, is provided for their enforcement, and to see to it that all violators thereof are arrested and punished. A mayor, police judge, marshal, city attorney and policemen are provided for, the latter *without limit as to number* save, of course, in reason. [Secs. 5905, 5907, 5919, 5922, 5923, R. S. 1899.] It seems to me to be getting outside of the bounds of reason to say, in the face of such ample express power, that it was either necessary or indispensable to go in search of implied power.

When a subject is covered by express provision an implied provision is excluded. Implication is called into requisition to supply the place of omitted expression. Thus, provision is made in this charter for a mayor and a police judge; if the duties of these should become onerous in the opinion of the council, could that body successfully claim implied power to make two

mayors and two police judges?  It can do so with as much legal support as the mayor had to go outside of the express provisions for a police judge, city attorney, marshal and all necessary policemen and apply the public money to the employment of other agencies than those the Legislature provided.  These suggestions I deem to be sufficient to show that references in Judge JOHNSON'S opinion to general rules of statutory construction cannot have application to the general provisions of a municipal charter.  In municipal charters the rule of construction is restrictive and implied power cannot be safely placed on mere liberality of interpretation.

The case of Crofut v. Danbury, 65 Conn. 294, in all essential particulars is like the one at bar, and the power here asserted was denied.  The town council of Danbury offered a reward for the detection of parties who were setting fire to buildings.  The plaintiff in that case was constable of the town and acted also as a private detective.  He spent much of his time in trying to detect the offenders and hired another detective to assist him. They finally discovered the guilty party and secured his conviction.  The charter of the town gave the council express authority to make ordinances "to preserve order and peace;" "to protect the city from fire and from the danger of the same;" and to "provide, regulate and prescribe the duties of the city police force."  It also provided (as does the charter of this defendant) for police force in such number as the council deemed necessary, and for a "fire police force" to act in conjunction with the fire department.  It was also made the duty of the Mayor to recommend to the council "the adoption of all such measures connected with the police, security, health and general well being of the city."  It also created a city court with criminal jurisdiction, and a prosecuting attorney whose duty was "diligently to enquire after and make due presentment or complaint to said

court of all crimes, misdemeanors and other criminal matters whereof said court has jurisdiction." The court, after stating the law as to the powers of a municipal corporation as it is stated by our Supreme Court in City of Independence v. Cleveland, supra, said that by the charter of Danbury "The 'city is supplied with all the ordinary machinery of justice, and is taxed for the support of a court, a prosecuting attorney, a general police force, and a special fire force, in addition to a regular fire department. To allow an ordinance of the common council to impose additional burdens upon the treasury in compensation for services rendered by private individuals which are of no other kind than those required by law of salaried public officials, would be to pay twice for the same thing, and, in effect, to substitute a plan of the city for the plan of the General Assembly."

In Hanger v. City of Des Moines, 52 Iowa 193, the authority of the city council to offer a reward for the detection of a murderer was involved. The court said that "No statute imposes such duty in express terms. That cities may pass such ordinances as shall be necessary and proper to provide for the safety of the inhabitants, and preserve peace and order therein, is provided by statute, but we do not believe that the offering of rewards for the detection of criminals is necessarily and fairly implied in this general grant of power, nor that it is essential to any declared purpose of the corporation. If it were doubtful it would be the duty of the courts to deny the power." I regard the case of Winchester v. Redmond, 93 Va. 711, as an authority against the power claimed by the defendants in this case. It is true the sentence quoted by Judge JOHNSON is uttered in the course of the opinion in that case, but the entire decision and the reasoning upon which it is based, are strongly against the assumption of power here contended for.

O'Dell v. Scranton.

It may be worth while to call attention to a provision in the charter of the defendant city (section 5907, Revised Statutes 1899) which authorizes the mayor to appoint a treasurer, street commissioner "and such other officers as he may by ordinance be authorized to appoint." But it is not pretended that there was any ordinance authorizing the appointment of detectives or that the mayor acted under the power stated. Nor is it necessary in this case to construe such provision.

Being of the opinion the city had not the power, it is not necessary to discuss the question of ratification. But I will say that I do not believe that question arises under the allegations of the answer. As stated by Judge JOHNSON, the appointment of the detectives was made and they were paid by the mayor without authority of an ordinance. But his act, though unauthorized, is said to have been ratified by the council when the warrant was directed to be issued to reimburse him. I think that the answer does not allege a ratification. If one part of it is read disconnected from all that is alleged on that subject, it is found that the pleader's conclusion that there was a ratification, is stated. But reading the entire allegation, it is clear that it was not intended by the pleader to state there *had been* a valid ratification, but that the council was ready to and *would* ratify by proper resolution and ordinance. The entire allegation on that head is as follows: "That thereafter, the aforesaid employment and payment was by said mayor, George F. Ballew, formally reported to the board of aldermen of said city of Hale, in regular session, and such employment and payment duly ratified and approved by said board of aldermen, which board of aldermen duly and legally issued to the said George F. Ballew, a warrant on the treasurer of said city of Hale for said sum of two hundred and nineteen dollars to reimburse and indemnify the said George F. Ballew, mayor as aforesaid, for the moneys by him laid out and expended

on account of such employment; that such employment was made for and in behalf of the said city of Hale, and said city of Hale received and accepted the benefits accruing therefrom, and is now ready to further ratify such employment and reimburse said George F. Ballew, its mayor, as aforesaid, by legal, proper and formal resolutions and ordinances, in strict compliance with law, and in the reasonable exercise of its legislative and discretionary powers and duties. . . .

"That said city of Hale, by its mayor and board of aldermen, desire to correct by valid and formal ordinance any irregularity there may have been in such employment, or in the ratification thereof and are ready to enact and approve a valid ordinance to that end."

It seems clear that no ratification by ordinance is stated. The mayor reported the employment and payment and the council in some way directed a warrant to issue. It was perhaps done by an entry on the minutes. But that no ordinance ratifying the mayor's acts was ordained, is manifest. The act of employing detectives, if authorized by law, is, of course, a municipal act,—is an exercise of municipal power which must be had by ordinance, and if there is no ordinance at the outset of the proceedings, there must, of course, be one of ratification afterwards. For an act which is necessary to be authorized by ordinance can be ratified only by ordinance. [State ex rel. v. Milling Co., 156 Mo. 620, 634; City of Unionville v. Martin, 95 Mo. App. 28, 37.]

As has been already intimated the Legislature, speaking through the charter of the defendant city, having provided, in detail, for the enforcement of the laws of the city, and having made specific provision for the officers who are to enforce those laws, it is not within the power of the city to substitute some other mode. To allow the exercise of such power is a dangerous precedent. The same argument used to uphold the power claimed in this case could be used with equal force and

consistency to support an attempt to tear away all barriers and limitations which every one has supposed surrounded municipal government. As I have stated, the power and duty to look after the general welfare of the city; to ordain all ordinances as shall be deemed expedient to the good government of the city, etc., necessarily does not mean unrestricted power, nor the substitution of a mode of the city for the mode provided by the legislature; and so the authorities state with substantial unanimity.

In my opinion the view of the learned trial judge was in accord with well-settled principles of law.